IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CHOICE HOTELS INTERNATIONAL, INC.,    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )        Civil Action No.: 7:17-cv-381
                                      )
A ROYAL TOUCH HOSPITALITY, LLC (NC),  )
A ROYAL TOUCH HOSPITALITY, LLC (VA),  )
UJAS B. PATEL and KETKI PATEL,        )
                                      )
            Defendants.               )

## MEMORANDUM OPINION

This is an action for trademark infringement filed by Choice Hotels International, Inc.

(Choice Hotels or Choice).  Choice Hotels alleges that A Royal Touch Hospitality, LLC (NC) (A

Royal Touch (NC)), Ujas B. Patel, and Ketki Patel (the Franchisee Defendants) continued using

Choice's trademarks after their franchise agreement with Choice was terminated.  Choice also

alleges that A Royal Touch Hospitality, LLC (VA) (A Royal Touch (VA)), a related non-franchisee,

made unauthorized use of Choice's marks.  Choice moves for summary judgment.  (Mot. Summ. J.,

Dkt. No. 36.)  Defendants are not represented by counsel, and none of the defendants responded to

Choice's motion for summary judgment.[1]

For the reasons stated below, the court will grant Choice Hotels' motion for summary

judgment.

---

[1] On May 4, 2018, the court granted defense counsel's motion to withdraw, and the corporate defendants were advised that they cannot appear or participate in this action without attorney representation.  (Dkt. No. 32.)  Choice moved for summary judgment on November 30, 2018, and on January 7, 2019, the court issued a *Roseboro* order to the *pro se* defendants, allowing them twenty-one days to file a response to Choice's motion.  (Dkt. No. 38.)  The court further reminded the corporate defendants that they must appear by and through counsel.  (*Id.*)  None of the defendants have filed any documents, communicated with the court, or made any sort of appearance in this matter since defense counsel moved to withdraw.

## I.  BACKGROUND

Choice Hotels is the owner of a family of QUALITY® trademarks which it uses in connection with its lodging franchise business.  Included in that family of marks are the following United States Trademark Registrations: the '881 registration; the '372 registration; the '294 registration; the '820 registration; and '488 registration; the '999 registration; the '875 registration; the '054 registration; the '436 registration; the '437 registration; the '888 registration; the '885 registration; the '789 registration; and the '912 registration.  (Dkt. Nos. 1-1 to 1-14.)

On or about June 16, 2010, Choice Hotels entered into a Franchise Agreement with A Royal Touch (NC), Ujas B. Patel, and Ketki Patel, which permitted them to operate a QUALITY INN® hotel franchise at 429 Main Street, Covington, Virginia 24426 (the Subject Property).  Seven days after execution of the Franchise Agreement, Ketki Patel created a new limited liability company in Virginia under the same name, A Royal Touch Hospitality, LLC, and identified the Subject Property as its registered office address.  A Royal Touch (VA) was never a party to the Franchise Agreement or the later-executed Reinstatement Agreement, and thus was not permitted to operate a QUALITY INN® hotel franchise at the Subject Property.

Ketki Patel, Ujas Patel, and A Royal Touch (NC) defaulted on their material obligations under the Franchise Agreement, and on December 30, 2013, Choice Hotels terminated the Franchise Agreement.  A Royal Touch (NC) was administratively dissolved in March 2014.  Even so, on or about April 22, 2014, Choice entered into a Reinstatement Agreement with Ujas B. Patel, Ketki Patel, and (purportedly) A Royal Touch (NC) reinstating the Franchise Agreement.  Ketki Patel executed the Reinstatement Agreement on behalf of A Royal Touch (NC) knowing that the company had been administratively dissolved.  Thereafter, Ketki Patel, Ujas Patel, and A Royal Touch (VA)—purporting to be A Royal Touch (NC)—defaulted on the payment obligations imposed by the Reinstatement Agreement.  Accordingly, on June 3, 2015, Choice Hotels terminated

the Reinstatement Agreement. The Franchisee Defendants admit they did not comply with the terms of the Notice of Termination.

On July 22, 2016, Choice issued a Notice of Service Mark Infringement to the Franchisee Defendants. The Franchisee Defendants admit the Notice of Service Mark Infringement instructed them to immediately discontinue all use of the QUALITY® family of marks and to take immediate action to correct its identity with third-party booking sites like Tripadvisor.com, Expedia.com, and Booking.com. The Franchisee Defendants admit they did not comply with the Notice of Infringement.

On or about August 5, 2017, counsel for Choice conducted a site inspection of the Subject Property. Photographs show the QUALITY® family of marks on display. (Compl. ¶ 81, Dkt. No. 1.) Defendants admit that in addition to signage bearing the QUALITY® family of marks, the hotel at the Subject Property displays a white BAYMONT INN & SUITES® branded banner. (Answer ¶ 82, Dkt. No. 10.) BAYMONT INN & SUITES® is not a Choice Hotels brand. (*Id.* ¶ 83.) Defendants further admit in their answer that the online third-party booking site Tripadvisor.com identifies the Subject Property as a BAYMONT INN & SUITES® but displays photographs of the hotel bearing both QUALITY® and BAYMONT INN & SUITES® signage. (*Id.* ¶ 84.) A photograph shows the hotel located at the Subject Property in obvious disrepair. (*Id.* ¶ 85.)

A Royal Touch (VA) was never a party to an agreement that would allow it to operate a QUALITY INN® hotel franchise at the Subject Property. Even so, A Royal Touch (VA) operated such a franchise from March 2014 until September 2017 while purporting to be A Royal Touch (NC).

After the Reinstatement Agreement was terminated on June 3, 2015, A Royal Touch (NC), Ketki Patel, and Ujas B. Patel were not authorized to use any of the marks in the QUALITY® family of marks at the Subject Property. Notwithstanding, A Royal Touch (VA), purporting to be A

Royal Touch (NC), Ketki Patel, and Ujas B. Patel continued to make extensive unauthorized use of the QUALITY® family of marks at the Subject Property until at least September 2017.

## II.  DISCUSSION

### A.  Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

As noted above, Choice's motion is unopposed, but the court does not automatically grant such a motion.

> [I]n considering a motion for summary judgment, the district court '*must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'  *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (emphasis added).  'Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion,' the district court must still proceed with the facts it has before it and determine whether the moving party is entitled to judgment as a matter of law on those uncontroverted facts.  *Id.*

*Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 n.8 (4th Cir. 2010).

### B.  Federal Trademark Infringement

Federal trademark infringement is governed by Section 32 of the Lanham Act.  15 U.S.C. § 1114.  To establish trademark infringement under the Lanham Act, Choice Hotels must prove:  (1) that it owns a valid mark; (2) that the defendant used the mark "in commerce" and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) "in connection

4

with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012).

## 1. Ownership of a valid trademark

Choice's certificates of registration are attached as exhibits to the complaint. (*See* Dkt. Nos. 1-1 to 1-14.) When the Patent and Trademark Office issues a certificate of registration, that registration provides the registrant with prima facie evidence of the validity of the mark and its registration, the registrant's ownership, and the registrant's "exclusive right" to use the mark on or in connection with the goods and services specified in the certificate of registration. *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002). In fact, these registrations have achieved "incontestable status" pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065. (*See* Dkt. Nos. 1-1 to 1-14.) Incontestable status is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). Choice has demonstrated that it owns the trademarks at issue.

## 2. Unauthorized use of the mark in commerce

By failing to respond to Choice's requests for admission,[2] defendants admitted to making unauthorized use of the QUALITY® family of marks after termination of the Franchise Agreement/Reinstatement Agreement. (*See* Dkt. Nos. 37-3, 37-4, 37-5, 37-6.) In their Answer, defendants admitted that the QUALITY® family of marks "were visible" at the Subject Property following termination of the Franchise Agreement. (Compl. ¶ 74; Answer ¶ 74.) Choice Hotels also provided photographic evidence of defendants' unauthorized use, taken more than two years

---

[2] Choice Hotels propounded Requests for Admission to the defendants, and none of the defendants responded. *See Cook v. McQuate*, No. 7:15-cv-456, 2017 WL 6944791, at *2 (W.D. Va. Dec. 4, 2017) ("Unanswered requests for admission can serve as the basis for summary judgment.")

after termination of the Franchise Agreement/Reinstatement Agreement.  (Compl. ¶ 81.)  Choice has demonstrated unauthorized use in commerce.

### 3.  In connection with sale of goods/services

By failing to respond to Choice's requests for admission, defendants admitted to making unauthorized use of the QUALITY® family of marks in connection with the provision of hotel services at the Subject Property after termination of the Franchise Agreement/Reinstatement Agreement.  (Dkt. Nos. 37-3, 37-4, 37-5, 37-6.)  Defendants admitted in their answer that the QUALITY® family of marks "were visible" at the Subject Property following termination of the Franchise Agreement.  (Compl. ¶ 74; Answer ¶ 74.)  Defendants also admitted to using Tripadvisor.com, an online third-party hotel booking site, which shows the QUALITY® family of marks in use in connection with the provision of hotel services at the Subject Property.  (Compl. ¶ 84; Answer ¶ 84.)  Choice has demonstrated unauthorized use in connection with the provision of goods/services.

### 4.  Likelihood of confusion

In determining the likelihood of confusion, courts in the Fourth Circuit apply the *Pizzeria Uno/Sara Lee* multi-factor test, which evaluates:

> (1) the strength or distinctiveness of the mark;
> (2) the similarity of the two marks;
> (3) the similarity of the goods/services the marks identify;
> (4) the similarity of the facilities the two parties use in their business;
> (5) the similarity of advertising used by the two parties;
> (6) the defendant's intent;
> (7) actual confusion
> (8) the quality of the defendant's product; and
> (9) the sophistication of the consuming public.

*La Michoacana Nat., LLC v. Maestre*, No. 3:17-cv-00727-RJC-DCK, 2018 WL 2465478, at *2 (W.D.N.C. June 1, 2018) (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) (setting forth factors one through seven); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463–

64 (4th Cir. 1996) (identifying factors eight and nine)). These factors "are not always weighed equally, and not all factors are relevant in every case." *Rosetta Stone*, 676 F.3d at 154. They "are only a guide—a catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion." *Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992).

As an initial matter, the court notes that the traditional likelihood of confusion analysis may be unnecessary because defendants are holdover franchisees. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) ("[P]roof of continued, unauthorized use of an original trademark by one whose license to use the trademark has been terminated is sufficient to establish 'likelihood of confusion.'"); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademark."). With a holdover franchisee,

> [t]here is a high risk of consumer confusion when a terminated franchisee continues to use the former franchisor's trademarks. Consumers will associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the franchise would therefore be attributed to the franchisor . . . . Because of this risk, many courts have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement.

*Am. Dairy Queen Corp. v. YS & J Enters., Inc.*, No. 5:14-cv-151-BR, 2014 WL 1327017, at *2–3 (E.D.N.C. Apr. 2, 2014). The court recognizes that A Royal Touch (VA) is not a former franchisee like the other three defendants (the Franchisee Defendants), and therefore may not technically be considered a holdover franchisee. The same principles, it seems, should apply to A Royal Touch (VA) because it was making unauthorized use of Choice's marks together with the Franchisee Defendants as a holdover from when the use was authorized. In any event, and in the interest of thoroughness, the court will analyze the traditional likelihood-of-confusion factors.

a. *Distinctiveness of the senior mark*

As noted above, Choice's trademarks are incontestable, and "an incontestable registered trademark enjoys a conclusive presumption of distinctiveness." *Savin Corp. v. Savin Group*, 391 F.3d 439, 457 (2d Cir. 2004) (citing *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 204–05 (1985)). The court is not legally precluded from finding that an incontestable registered trademark is weak, *see Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 92 (4th Cir. 1997), but because defendants failed to oppose Choice's motion, there is no evidence to rebut the presumption of distinctiveness. *See Progressive Dist. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 429 (6th Cir. 2017) ("Undoubtedly, Progressive's claim of incontestability is entitled to a presumption of strength. However, a party may rebut the presumption of strength and show that a mark is not distinctive."). Therefore, the distinctiveness factor weighs in favor of a finding of likelihood of confusion.

b. *Similarity (factors 2–5)*

The Fourth Circuit refers to factors two through five as the "similarity" factors. *See Sara Lee*, 81 F.3d at 465 (stating that the "similarity factors" are "the similarity of the two marks, of the goods [and services] the marks identify, of the facilities employed to transact the parties' business, and of the advertising used by the parties."). Defendants used the same marks—the QUALITY® family of marks—in connection with the same goods and services, at the same property that previously operated as a franchisee of Choice Hotels until the Franchise Agreement/Reinstatement Agreement was terminated. The similarity factors favor a finding of likelihood of confusion.

c. *Defendants' intent in adopting the same or similar mark*

A Royal Touch (VA) used Choice's marks despite never being a party to a franchise agreement. This is clear evidence of intent to adopt Choice's marks. The other three defendants (the Franchisee Defendants) continued using Choice's marks after the Franchise

8

Agreement/Reinstatement Agreement was terminated. This is also clear evidence of intent to adopt the marks. The intent factor therefore favors a finding defendants' use of Choice's marks was likely to confuse consumers.

### d. *Actual confusion*

Choice argues that defendants' simultaneous use of the QUALITY® family of marks and a BAYMONT INN & SUITES® branded banner would result in actual consumer confusion. The court does not consider this to be evidence of actual consumer confusion. *See, e.g.*, *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009) ("Actual confusion can be demonstrated by both anecdotal and survey evidence."). Such evidence likely is not necessary, however, because of defendants' actions as a holdover franchisee. *See, e.g.*, *Hospitality Int'l, Inc. v. Mahtani*, Civil Action No. 2:97CV87, 1998 WL 35296447, at *20 (M.D.N.C. Aug. 3, 1998) ("In effect, courts have recognized that a holdover franchisee's unauthorized use of the franchisor's mark can have no result other than to cause actual confusion."). Also, "it is well established that no actual confusion is required to prove a case of trademark infringement." *Louis Vitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 563 (4th Cir. 2007). Therefore, the absence of any specific evidence of actual confusion does not preclude a finding of likelihood of confusion, particularly where, as here, defendants illegally used Choice's marks as a holdover franchisee.

### e. *Quality of defendants' product*

Defendants' continued unauthorized use of the QUALITY® family of marks has deprived Choice Hotels of the ability to exercise quality control over its brand. (*See* Compl. ¶ 85 ("[T]he hotel located at the Subject Property is in a state of obvious disrepair/construction. A true and correct photograph of the damaged carport taken by the undersigned on August 5, 2017, appears below . . . ."); Answer ¶ 85.) This factor therefore favors a likelihood-of-confusion finding.

### f. *Sophistication of the consuming public*

"Barring an unusual case, buyer sophistication will only be a key factor when the relevant public is not the public at-large." *Sara Lee*, 81 F.3d at 467. The hotel services at the Subject Property were marketed to the general public. Tired travelers on interstate highways, for example, would not be able to discern that defendants were not operating a legitimate QUALITY® franchise. Neither would consumers booking a room online. This factor weighs in favor of likelihood of confusion.

Based on the foregoing, Choice has established that defendants' unauthorized use of the QUALITY® family of marks was likely to confuse consumers.

*** 

In its motion for summary judgment, Choice provided evidence in support of each element of its trademark infringement claim. Based on these uncontroverted facts, Choice is entitled to judgment as a matter of law.

## C. Federal Unfair Competition

Choice also asserts a claim against defendants for unfair competition under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a)(1). "Federal trademark infringement, 15 U.S.C. § 1114(1)(a), and a false designation of origin claim, known more broadly as federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 580 (E.D. Penn. 2002) (citing *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)); *Microsoft Corp. v. Computer Serv. & Repair, Inc.*, 312 F. Supp. 2d 779, 785 (E.D.N.C. 2004) ("The same undisputed facts that establish defendant Barskile's violation of § 1114 of the Lanham Act also establish that Barskile has violated § 1125(a) of the Lanham Act by falsely designating the origin of the software that was distributed."). Therefore, based on the uncontroverted facts supplied in

support of its trademark infringement claim, Choice is also entitled to judgment on its federal unfair competition claim.

## D.  Common Law Trademark Infringement

"The test for trademark infringement and unfair competition is essentially the same as that for common law unfair competition under Virginia law."  *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995).  Based on the above analysis, Choice is entitled to judgment as a matter of law on this claim.

## E.  Requested Relief

Choice seeks the following relief on its claims: (1) a permanent injunction prohibiting defendants from further use of the QUALITY® family of marks; (2) $2,426,936.96 in infringer profits; (3) $206,289.44 in actual damages, trebled to $618,868.32; and (4) $575.00 in costs.

### 1.  Permanent Injunction

A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the balance of the hardships favors the party seeking the injunction; and (4) the public interest would not be disserved by the injunction.  *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011) (citing *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)).

As discussed above, Choice has proven that defendants' unauthorized use of the QUALITY® family of marks resulted in likely confusion among consumers in the hotel and motel services marketplace.  "The Fourth Circuit has held that, in the context of a Lanham Act trademark infringement action, '[a] finding of irreparable injury [to the plaintiff] ordinarily follows when a likelihood of confusion or possible risk to reputation appears.'"  *Wonder Works v. Cranium, Inc.*, 455 F. Supp. 2d 453, 457 (D.S.C. 2006) (quoting *Lone Star Steakhouse*, 43 F.3d at 938); *see also Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002) ("In Lanham Act cases

involving trademark infringement, a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case."). For similar reasons, money damages are typically considered an inadequate remedy for trademark infringement. "Monetary damages in trademark infringement suits are typically inadequate because while they may compensate plaintiffs for damages they have already incurred, monetary damages do not prevent future infringement from occurring." *RXD Media, LLC v. IP Application Dev't*, Case No. 1:18-cv-486, 2019 WL 2569543, at *1 (E.D. Va. June 21, 2019). The risk of continuing injury is particularly acute given defendants' refusal to participate in this lawsuit to its conclusion. *See Overstock.com, Inc. v. Visocky*, Civil Action No. 1:17-cv-1331 (LMB/TCB), 2018 WL 5075511, at *10 (E.D. Va. Aug. 23, 2018); *see also Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003) ("Defendant, though well aware of serious claims brought against it, has chosen to ignore this lawsuit. Failure to grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm.").

Balancing the hardships, Choice has a significant interest in maintaining the integrity of its intellectual property, and the absence of a permanent injunction would subject Choice to the risk of having its marks used in commerce by an uncontrollable entity. Defendants, by contrast, would be required not to use Choice's trademarks. The balance clearly favors Choice.

Finally, the public interest is served by protecting the integrity of Choice's marks and preventing potential consumer confusion in the marketplace. *See BMW of N. Am., LLC v. FPI MB Entm't, LLC*, C/A No. 4:10-82-TLW-SVH, 2010 WL 4365838, at *3 (D.S.C. Sept. 13, 2010) ("Preventing confusion is in the public interest.").

For these reasons, the court will enter a permanent injunction preventing defendants from using the QUALITY® family of marks.

## 2. Damages

Under the Lanham Act, damages for trademark infringement may include (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). "The court shall assess such profits and damages or cause the same to be assessed under its direction" and ensure that any relief awarded "shall constitute compensation and not a penalty." *Id.* "Awarding damages makes 'violations of the Lanham Act unprofitable to the infringing party.'" *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 868 F. Supp. 2d 468, 490 (D. Md. 2012) (quoting *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F. Supp. 350, 380 (W.D.N.C. 1997)).

The Fourth Circuit has identified six nonexclusive factors that should be considered when awarding damages or a defendant's profits:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006). Choice's motion addresses how the court should calculate the amount of damages requested in this case, but Choice does not address the *Synergistic* factors, which the court must consider in conjunction with a damages award. *See id.* at 174 (remanding to the district court because the court "did not specify the equitable factors it had utilized in making" its damages award). Given the large amount of damages requested in this case, the court is not inclined to address these factors without more input from Choice. The court will therefore request supplemental briefing from Choice on damages.

## 3. Attorney fees

The Lanham Act provides that the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A district court may find a case

"exceptional" under § 1117(a) when it determines, in light of the totality of the circumstances, that (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence. *Verisign, Inc. v. ZYZ.COM LLC*, 891 F.3d 481, 483–84 (4th Cir. 2018) (citing *Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015)).

The court cannot conceive of any plausible argument that defendants did not make unauthorized use of Choice's marks. Defendants admitted Choice's material allegations in their answer to Choice's complaint and during discovery. Moreover, defendants have litigated this case in an unreasonable manner by not responding to Choice's motion for summary judgment and effectively abandoning their defense in this case. Therefore, the court finds that this is an exceptional case justifying an award of attorney fees. Choice may submit an appropriate lodestar petition together with its supplemental brief on damages.

### III. CONCLUSION

For the foregoing reasons, Choice's motion for summary judgment will be granted. The court will enter an appropriate order.

Entered: August 26, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge