IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHOICE HOTELS INTERNATIONAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> A ROYAL TOUCH HOSPITALITY, LLC (NC), ) <br> A ROYAL TOUCH HOSPITALITY, LLC (VA), ) <br> UJAS B. PATEL and KETKI PATEL, ) <br> ) <br> Defendants. ) | Civil Action No.: 7:17-cv-381 <br><br> By: Elizabeth K. Dillon <br> United States District Judge |

**MEMORANDUM OPINION**

This matter is before the court for a determination of damages to be awarded Choice Hotels International, Inc. (Choice Hotels or Choice) in this trademark infringement action. For the reasons stated below, the court will award $2,426,936.96 in lost profits, $618,868.32 in actual damages, and $575.00 in costs. The court will also award $47,687.57 in attorneys' fees.

I. BACKGROUND

Choice alleges that A Royal Touch Hospitality, LLC (NC) (A Royal Touch (NC)), Ujas B. Patel, and Ketki Patel (the Franchisee Defendants) continued using Choice's trademarks after their franchise agreement with Choice was terminated. Choice also alleges that A Royal Touch Hospitality, LLC (VA) (A Royal Touch (VA)), a related non-franchisee, made unauthorized use of Choice's marks. Choice moved for summary judgment. (Pl.'s Mot. for Summ. J., Dkt. No. 36.) This motion was unopposed.

On August 26, 2019, the court issued a Memorandum Opinion and an Order granting in part and taking under advisement in part Choice's motion for summary judgment. (*See* 8/26/19 Mem. Op., Dkt. No. 41; 8/26/19 Order, Dkt. No. 42.) The court determined that Choice was entitled to judgment as a matter of law on its claims for federal trademark infringement, federal unfair

competition, and common law trademark infringement. *See* 2019 WL 4017247, at **3–6 (W.D. Va. Aug. 26, 2019). The court also issued a permanent injunction prohibiting defendants from further use of the QUALITY® marks. (8/26/19 Order.) Regarding damages, the court requested further briefing from Choice on the *Synergistic* factors, "six nonexclusive factors that should be considered when awarding damages or a defendant's profits." 2019 WL 4017247, at *7. The court also found that Choice was entitled to an award of attorneys' fees, and invited Choice to submit an appropriate lodestar petition together with its supplemental briefing on damages. *Id.* at *8. Choice submitted its supplemental brief on damages on September 25, 2019, and its lodestar petition on September 26, 2019, both of which are now before the court for its consideration.

## II. DISCUSSION

### A. *Synergistic* Factors

The Fourth Circuit has identified six nonexclusive factors that should be considered when awarding damages under the Lanham Act:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006). The court addresses each factor in turn.

#### 1. Intent to confuse or deceive

The first *Synergistic* factor "addresses whether there has been a willful infringement on the trademark rights of the plaintiff, or whether the defendant has acted in bad faith." *Id*. As the court stated in its analysis of the likelihood of confusion factors,

> A Royal Touch (VA) used Choice's marks despite never being a party to a franchise. This is clear evidence of intent to adopt Choice's marks. The other three defendants (the Franchisee Defendants) continued using Choice's marks after the Franchise

2

> Agreement/Reinstatement Agreement was terminated. This is also
> clear evidence of intent to adopt the marks.

2019 WL 4017247, at *5. This factor therefore weighs in favor of a damages award.

### 2. Diversion of sales

This factor "involves the issue of whether the plaintiff lost sales as a result of the defendant's trademark infringement activities, and the extent to which the plaintiff had entered the market area where the infringement occurred." *Synergistic*, 470 F.3d at 175. Defendants were franchisees of Choice Hotels, and their continued unauthorized use of Choice's marks after the Franchise Agreement was terminated occurred in the same market area—indeed the same exact location. Also, under the Franchise Agreement, defendants were required to pay monthly fees in the amount of 8.5% of the preceding month's gross room revenues. (*See* Dkt. No. 1-15, ¶ 4(b).) Therefore, this factor also weighs in favor of an award of damages.

### 3. Adequacy of other remedies

This factor "addresses whether another remedy, such as an injunction, might more appropriately correct any injury the plaintiff suffered from the defendant's infringement activities." *Synergistic*, 470 F.3d at 176. The court has issued a permanent injunction in this case, but injunctive relief does not compensate Choice for more than two years of unauthorized use of its marks. The court also notes that it ordered defendants to submit a sworn statement of compliance with the injunction order within thirty days, but no compliance statement has been filed, further demonstrating the inadequacy of the injunction remedy. This factor weighs in favor of a damages award.

### 4. Unreasonable delay

This factor looks to whether there was "any unreasonable delay by the plaintiff in asserting his rights." *Id.* The record reflects that Choice acted promptly in asserting its trademark rights, for example, by terminating the Reinstatement Agreement in 2015, issuing a Notice of Service Mark

Infringement in 2016, conducting a site inspection of the subject property in 2017, and ultimately, bringing this lawsuit in 2017. *See Choice Hotels*, 2019 WL 4017247, at *2. The court does not consider this to be a "substantial delay between the commencement of infringement activities and the plaintiff seeking judicial relief." *Synergistic*, 470 F.3d at 176. This factor also weighs in favor of an award of damages.

### 5. Public interest

This factor is analyzed to determine whether a damage award would further "the public interest in making the misconduct unprofitable." *Id.* It "addresses the balance that a court should strike between a plaintiff's right to be compensated for the defendant's trademark infringement activities, and the statutory right of the defendant to not be assessed a penalty." *Id.* The court finds that the public interest is served by a damages award in this case to ensure that trademark infringement is not considered a profitable enterprise.

### 6. Palming off

This factor "involves the issue of whether the defendant used its infringement of the plaintiff's mark to sell its products, misrepresenting to the public that the defendant's products were really those of the plaintiff." *Id.* This factor clearly favors a damages award when, as here, the case involves a "holdover franchise." *See Choice Hotels*, 2019 WL 4017247, at *4 (discussing the "high risk of consumer confusion when a terminated franchisee continues to use the former franchisor's trademarks" because consumers will "associate the trademark user with the registrant and assume that they are affiliated").

***

For the foregoing reasons, the court finds that an award of damages is warranted by its analysis of the *Synergistic* factors.

**B. Damages**

Under the Lanham Act, damages for trademark infringement may include (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). "The court shall assess such profits and damages or cause the same to be assessed under its direction" and ensure that any relief awarded "shall constitute compensation and not a penalty." *Id.* "Awarding damages makes 'violations of the Lanham Act unprofitable to the infringing party.'" *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 868 F. Supp. 2d 468, 490 (D. Md. 2012) (quoting *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F. Supp. 350, 380 (W.D.N.C. 1997)).

**1. Profits of the infringer**

"An award to the plaintiff of the defendant's profits, even if plaintiff's actual sustained losses may have been less, is appropriate under theories of unjust enrichment or deterrence." *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 855 (E.D. Va. 1998) (citing *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989)). The Lanham Act provides that in "assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Choice attempted to obtain gross room revenues and cost or expense figures from defendants through discovery, but defendants did not respond to their discovery requests. The most recent revenue figures are for the twelve-month period from May 2014 through April 2015, which was $1,040,115.91, for an average of $86,676.32 per month. (*See* Declaration of Stuart M. Kreindler ¶ 13, Dkt. No. 37-7.) Choice requests this amount for the 28-month term of the holdover period (June 2015—September 2017), for a total of $2,426,936.96. The court finds that this is a reasonable estimate of the gross room revenue for the holdover period.

5

The Lanham Act further provides that if "the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."  § 1117(a). A damages award for lost profits in excess of two million dollars may seem excessive, but it was defendants' burden to prove offsetting costs, and their continued refusal to participate in this litigation does not weigh in their favor.  *See Joy Mfg. Co. v. CGM Valve & Gauge Co.*, 730 F. Supp. 1387, 1395 (S.D. Tex. 1989) ("[Defendants] failed to prove or offer to prove any elements of cost or deduction claimed; therefore, plaintiff is entitled to an award of the full amount of defendants' sales.") (declined to follow on other grounds in *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1302 (Fed. Cir. 2009)).  Defendants' intentional misconduct as a holdover franchisee is apparent from the undisputed record in this case.  Therefore, the court finds that a damages award consisting of $2,426,936.96 in lost profits is warranted to make trademark infringement unprofitable.

### 2. Actual damages

"When a trademark infringement action is established because a franchisee 'holds over' as here, and damages are based on the franchisor's losses, royalties normally received by the franchisor and expenditures necessary to establish a new franchise will constitute substantial elements in the damage award."  *La Quinta Corp. v. Heartland Prop. LLC*, 603 F. 3d 327, 344 (6th Cir. 2010); *see also Ramada Inns, Inc. v. Gadsen Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986) ("Royalties normally received for the use of a mark are the proper measure of damages for misuse of those marks."); *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 584 (M.D.N.C. 2009) ("Courts have recognized that where damages are difficult to measure, an appropriate measure of damages includes an approximation of the royalties the defendant would have had to pay, had it recognized the validity of the plaintiff's claims.").

As noted above, defendants were required to pay monthly fees in the amount of 8.5% of the preceding month's gross room revenues, and a reasonable estimate of monthly gross room revenue for the 28-month holdover period is $86,676.32 per month. This calculation renders a total of $206,289.44. Further, given the nature of defendants' trademark violations, the court agrees with Choice that its damages should be trebled for an actual damages award of $618,868.32. *See* § 1117(a) ("In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.").

### 3. Costs

The court will award $575 as costs of the action: $400 for the filing fee, and $175 for service of process fees.

## C. Attorneys' Fees

An award of attorney fees requires an application of the traditional lodestar methodology factors. *See Anthony v. Crestview Wine & Spirits, LLC*, Civil Action No. CBD-18-3667, 2019 WL 4673403, at *4 (D. Md. Sept. 24, 2019). The starting point in the lodestar calculation is multiplying the number of hours reasonably expended by a reasonable hourly rate. *Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). The lodestar amount in this case is $47,687.57. A court's calculation of a lodestar figure enjoys a strong presumption of accuracy. *McAfee v. Boczar*, 738 F.3d 81, 88–89 (4th Cir. 2013).

Courts are then charged with considering certain factors in calculating a reasonable figure. Those factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in

controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243–44; *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.23 (4th Cir. 1978).

### 1. Time and labor expended

Choice is represented in this matter by its national enforcement counsel, Matthew Ladenheim at the firm of Trego, Hines & Ladenheim, PLLC, and local counsel Charles J. Ladenheim. The attorneys in this case have dedicated approximately 176.7 hours of attorney time over a two-year period. The work includes investigation of infringement; drafting the complaint; serving the complaint; and editing, revising, and filings a motion for summary judgment.

### 2. Novelty and difficulty of the questions raised

This case did not present any novel or difficult questions of trademark law.

### 3. Skill required

Even though this was a standard infringement proceeding, the court agrees that some measure of advanced practice is required to effectively pursue an infringement claim. "Trademark litigation is a particularly difficult field of specialization and is recognized as meriting greater than average rate of pay." 5 McCarthy on Trademarks and Unfair Competition § 30:102 (4th Ed.). Both attorneys in this case have extensive experience in litigation. Matthew Ladenheim has practiced for 18 years in the area of intellectual property litigation, a significant portion of which is devoted to trademark litigation.

### 4. Opportunity costs

Choice was billed for work on an hourly basis. The attorneys did not work on a contingency basis.

### 5. Customary fee

Choice was billed at a rate of $300 per hour for work by Matthew Ladenheim and $200 per hour for work by Charles Ladenheim. These rates are below the mean billing rates for private practice attorneys specializing in intellectual property law, both nationally and in the Southeastern United States.

**6. Attorney's expectations**

Both attorneys expected to be billed for the hours of legal services performed at their hourly rate.

**7. Time limitations**

The only time limitations imposed by Choice was its desire to end the infringement as soon as possible. Defendants' failure to participate in this litigation hindered that goal.

**8. Amount in controversy and results obtained**

The court's rulings on summary judgment and its award of damages represent a successful litigation outcome for Choice.

**9. Experience, reputation, and ability of the attorneys**

Matthew Ladenheim, as noted above, has 18 years of experience practicing in intellectual property law. He is a Board Certified Specialist in Trademark Law and serves as Member of the Board of the North Carolina State Bar Board of Legal Specialization. Charles Ladenheim has been practicing law for 45 years and has extensive litigation experience in state and federal court.

**10. Undesirability of the case**

There is nothing undesirable about this case in the legal community where it arose.

**11. The nature and length of the professional relationship**

Matthew Ladenheim's firm has served as trademark counsel for Choice Hotels for approximately ten years.

**12. Attorney fee awards in similar cases**

The court was unable to locate any recent trademark infringement action in this district addressing the reasonableness of attorney billing rates, but courts have approved billing rates in the $200–$300 range for non-trademark cases. *See Nationwide Property & Casualty Ins. C. v. Jacobsen*, Civil Action No. 7:14-00516, 2015 WL 7302443, at *2 (W.D. Va. Nov. 18, 2015) (finding hourly rates of $210, $250, and $300 reasonable because they are "consistent with the prevailing market rates").

***

Based on its analysis of the foregoing factors, the court concludes that the requested attorney fee award of $47,687.57 is reasonable.

III. CONCLUSION

Based on the foregoing, Choice's motion for summary judgment (Dkt. No. 36) will be granted as to damages, and Choice is entitled to $2,426,936.96 in lost profits, $618,868.32 in actual damages, and $575.00 in costs. Choice is also entitled to an award of $47,687.57 in attorneys' fees. The court will enter an appropriate order.

Entered: September 30, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge